UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

YULY ARONSON,

                    AFFIRMATION IN OPPOSITION
                    TO PRELIMINARY INJUNCTION

            Plaintiff,

        -against-                           Case No. 07 CIV 9405

ANTHONY BRANCA,                    Assigned Judge:  Kenneth M. Karas

            Defendant
-------------------------------------------------------X

PETER T. GOORICH, an attorney duly admitted to practice law before the courts of the State of New York, affirms the following to be true under the penalty of perjury:

    1.     I am the attorney of record for Anthony Branca, the defendant herein. I submit this affirmation in opposition to plaintiff's request for injunctive relief.

    2.     The facts of this matter, stated upon personal knowledge, are set forth in the Affidavit of Anthony Branca, submitted herewith.

    3.     Plaintiff has requested very broad injunctive relief, requesting the court to enjoin defendant from dealing in any way with the property and bank accounts held in the name of Windward Holdings and Bearhill Associates.

    4.     As set forth in the defendant's affidavit, plaintiff is not a shareholder of Windward Holdings. Any interest which plaintiff had in Windward Holdings was validly transferred to defendant in a sale for valid consideration which was paid in full. Defendant is the sole shareholder of Windward Holdings.

    5.     Windward Holdings is a holding company for real property which is currently being actively managed and developed.

6.    Plaintiff and defendant are equal members of Bearhill Associates LLC. Bearhill Associates owns a parcel of undeveloped land which is currently being developed, subdivided and is on the market for sale.

7.    Enjoining defendant from managing and transferring the properties owned by Windward Holdings and Bearhill Associates, his own companies, would irreparably harm defendant and the entities.

8.    Simultaneously with seeking injunctive relief, plaintiff has filed a complaint against defendant seeking monetary damages. Plaintiff has adequate recourse against defendant in the context of the action for monetary damages should he prevail in his claims.

9.    Plaintiff has failed to show how he will be irreparably harmed if the injunctive relief requested herein is not granted.  Defendant, on the other hand, will never have the ability to recover the amounts which will be lost if he is not able to continue with the development of the properties owned by Windward and Bearhill, and to carry on the day to day management of the rental properties.

10.    Based on the foregoing, I respectfully request that the court deny the injunctive relief requested in all respects.

Dated:  December 5, 2007
        White Plains, NY

Duly affirmed:

Peter T. Goodrich, Esq. (PG-2443)
Goodrich & Bendish
Attorneys for Defendant
399 Knollwood Raod
White Plains, NY 10603
(914) 683-8484

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | |
|---|---|
| YULY ARONSON,<br><br>        Plaintiff,<br><br>    -against-<br><br>ANTHONY BRANCA,<br><br>       Defendant | AFFIDAVIT IN OPPOSITION TO<br>PRELIMINARY INJUNCTION<br><br>Case No. 07 CIV 9405<br><br>Assigned Judge: Kenneth M. Karas |

------------------------------------------------------X

STATE OF NEW YORK      )
                             )ss.:
COUNTY OF WESTCHESTER  )

      ANTHONY BRANCA, being duly sworn, deposes and says:

I am a party to this action, am over eighteen years of age and reside in Westchester County, New York.

    1.    I am the defendant in this action and submit this Affidavit in opposition to plaintiff's request for a preliminary injunction, enjoining me from the sale, transfer, encumbrance or pledging as collateral the following property: Bank of New York (now Chase) account no. 670-2308362; Prestige Financial Center/Account No. P6GGLKIR; Smith Barney Acct. No. 147-62797-14; Smith Barney Acct. No. 147-03613-10; Smith Barney Acct. No. 147-62797-14; Smith Barney Acct. No. 578-21674; Smith Barney Acct. No. 578-22807; Smith Barney account held in the name of FCM Group, Inc.; property held by or in the name of Windward Holdings Corp.; property held in the name of Bearhill Associates, LLC.

1

2.      I have had a business and personal relationship with the plaintiff since 1986. During that time, we have worked together in various real estate development ventures and have shared a financial interest in various properties and projects.

3.      Each and every one of plaintiff's allegations that I have misappropriated funds from plaintiff and various entities in which plaintiff has an interest, or that I have forged plaintiff's signature on any occasion, is totally false and without merit.

4.      Upon information and belief, plaintiff is the sole shareholder of May Construction Inc., a New York corporation.

5.      I am a certified public accountant and a principal of the accounting firm, A.A. Branca & Co.

6.      In or about 1999, plaintiff and I began working together in May Construction. I handled the "back office" and defendant handled all of the construction projects. I handled human resources, payroll, accounts receivable, and accounts payable. I prepared all of the business and tax filings, and I prepared the financial statements, kept a general ledger and prepared the balance sheets. I was an authorized signer on the May Construction commercial account at the Bank of New York. A copy of the signature card is attached as Exhibit A.

7.      I am also listed with the bonding company for May Construction as the person authorized to take any necessary steps to close out the business of the company and to handle the succession in the event of the untimely death of plaintiff.

8.      At all times that I worked with plaintiff in May Construction, he reviewed the bank statements each month and if he had any questions at all about checks that were written, he would ask me and I would tell him exactly what the checks were for. The

2

paid bills file was maintained in a common unlocked space fully accessible to the plaintiff. I also supplied plaintiff with periodic reports which showed all of the payments which were made to my accounting firm for services provided to May Construction. A copy of the vendor report is attached hereto as Exhibit B. At no time was any payment made to me, individually, or to my accounting firm, without the knowledge and consent of plaintiff. Plaintiff's contention that he made a recent review of random checks and learned that I signed checks either myself or in his name without his authority and consent is totally false. All checks listed in the plaintiff's affidavit are reported as being paid on the vendor report and have been properly deducted from any accounting fees claimed to be due.

9.    As previously stated, each month the May Construction bookkeeper would give plaintiff the unopened bank statements for May Construction. Plaintiff himself opened the bank statements, reviewed them in detail and gave them back to the bookkeeper to reconcile. I never reconciled the bank account to insure proper segregation of duties. If he had any questions, he raised them with me or the bookkeeper or would pull the invoice directly. Either way, all issues were resolved every month to his full and complete satisfaction. See Affidavit of Lorraine Pellegrino.

10.    Plaintiff's contention that he "recently" received a letter dated March 9, 2002, and another letter December 16, 2006, is false. When my accounting firm was retained in 2002 to perform accounting services for May Construction, I sent plaintiff the engagement letter dated March 9, 2002. I continued to act as May Construction's accountant until December, 2006.

11.    In or about the middle of 2006, May Construction began to have financial difficulties and was in arrears in its obligations to me and others. It became obvious that the company would not survive to the end of the year. At that time, I resigned as May Construction's accountant and sent the termination letter to plaintiff. I wanted to complete my file on May Construction in anticipation of potential litigation from vendors, customers and the bonding company, so I sent him a copy of the original engagement letter again and asked for his signature. (My original could not be located). Plaintiff signed both documents in December, 2006, in my office. Plaintiff was asked to, and did, back date the engagement letter to March 15, 2002, to reflect the actual date of engagement and then apparently incorrectly dated the termination letter March 15, 2002. Plaintiff's allegation that I fraudulently executed either of these documents is totally false. I have the signed originals of both letters, and the signature on both documents, in blue ink, is unquestionably that of plaintiff.

12.    In addition to acting as May Construction's accountant, as previously stated, I ran the entire back office of the business. As such, plaintiff and I had an agreement that I would have a financial interest in the profits of the company.

13.    At the end of every calendar year, plaintiff and I would receive a year-end bonus from May Construction and use these moneys to fund our individual retirement accounts. My bonus was paid directly from the company into my Smith Barney retirement account and plaintiff's to one of his accounts at Prestige Financial. This was a yearly practice which began in 2002. The checks to Smith Barney that plaintiff attached as Exhibit E to his affidavit, were checks written to Smith Barney for my 2005 bonus. Again, plaintiff was fully aware and authorized these payments to my retirement account

4

and the same contributions were made from May Construction to plaintiff's retirement account for his year end bonus.

14.    In addition to our business relationship in May Construction, plaintiff and I shared a business relationship in Windward Holdings Corp. ("Windward") and Bearhill Associates LLC ("Bearhill"). At no time did I act as the certified public accountant for either of these entities. I maintained the books, managed the companies, and handled all activity in these entities. I never prepared or issued certified financial statements. As an owner, I did prepare and file the tax returns.

15.    Plaintiff is not a shareholder of Windward. Both plaintiff and I are members of Bearhill. A copy of our Bearhill Associates operating agreement is attached hereto as Exhibit C.

16.    Windward is a holding company for several parcels of real property, some of which I paid 100% for and one in which both plaintiff and I shared a financial interest. Windward also owns a parcel of property known as 700 Summer Street, Stamford, CT which is a mixed use office/residential property where May Construction maintained its offices. Windward also owns property in Bedford, NY identified as "Middle Patent Road" which is currently being developed. Bearhill owns 37 acres of undeveloped land in Putnam County, New York which is currently being developed.

17.    Windward has been, and is currently, paying the operating and development costs for the development of both the Middle Patent Road property and the Bearhill property. Money was contributed to Windward by May Construction and by me, individually. Every month, I prepared reconciliation between plaintiff and myself which showed all of the expenses and our contributions to the various projects that we shared.

5

We referred to the reconciliation as "The Sheet." Plaintiff reviewed the sheet and made any notations where he thought items were incorrect or needed to be adjusted or discussed and would add any expenses incurred by him related to our various ventures.. Each month, we would go over everything together, we would agree to the accuracy of the figures on the sheet. Any balance would be carried over to the next monthly sheet.

18.    In 2005, I bought out plaintiff's financial interest in Windward Holdings which included his interest in 700 Summer Street.

19.    We listed 700 Summer Street for sale on the open market. After receiving an offer to purchase from a disinterested third party in the amount of $405,000.00, we set that amount as the buy-out price. We made adjustments for the real estate commission, the transfer taxes, the security deposit that was being held on behalf of the tenants, and the cash in Windward's bank account. We agreed on a purchase price of $376,355. I bought plaintiff's one-half interest for $188,177.00. I wrote him a personal check for $180,000.00 and gave him a credit of $8,177.00 on "the sheet" for the next month. Copies of the reconciliation and my check payable to plaintiff are attached hereto as Exhibit D. As part of the agreement, May Construction agreed to continue to pay rent to Windward for use of its office space.

20.    When we agreed on the figure to buy-out the plaintiff's interest in Windward, he executed the Amendment to Shareholders Agreement. Plaintiff's claim that he did not sign the amendment is totally false. The fact of the buy-out and transfer of his interest is supported by the documents contained in Exhibit D.

21.    As part of our agreement to buy out plaintiff's interest in Windard, we agreed that plaintiff would continue to have an interest in two mortgages that were held

6

by Windward with two individuals, Jacek Swinderski and Grzegorz Watroba.  The

Swinderski mortgage in the amount of $150,000.00 was paid off, and on 9/1/06 a check

for plaintiff's half was paid from Windward's account to plaintiff in the amount of

$75,000.00.  A copy of this check is attached as Exhibit E.

22.    The Watroba mortgage was paid off in various amounts beginning in

January, 2006 until March, 2007.  The amount of the loan, $90,000.00, was recorded and

one half was credited to plaintiff and used to offset the expenses to subdivide the various

properties with the full knowledge and consent of plaintiff.

23.    Plaintiff has also falsely stated that I transferred money from an account in

the name of Landmark Construction to myself.

24.    May Construction began to have financial problems and it appeared would

be unlikely to continue as a going concern.  The bonding company was stepping in to

take over all outstanding projects which would stop all future cash flows into May

Construction.  Additionally, May Construction was no longer able to get bonded for

projects going forward.  Plaintiff transferred money from May Construction into

Landmark Construction of NY ("Landmark") to avoid May Construction's creditors and

to try to continue in the construction business under Landmark's name.   Plaintiff named

a "straw man" as the president of Landmark so that his ownership would be shielded.  I

was the only authorized signer on the Landmark accounts, as he did not trust the straw

man.  At no time was any stock issued in this entity. The Landmark construction projects

never materialized, and plaintiff decided to liquidate the accounts but did not want to take

the money in his personal accounts as that might constitute fraud.   The plaintiff owed me

a substantial amount of money for an imbalance on the sheet as a result of money I had

7

contributed to fund our various joint projects including Middle Patent Road and Bearhill Associates. He authorized me to transfer money from Landmark to myself to pay part of the amount owed to me by plaintiff. This transaction was recorded on the sheet.

25.    All of the allegations contained in plaintiff's affidavit in support of his request for injunctive relief are false.

26.    Upon information and belief, plaintiff and his company, May Construction, are in dire financial straits. Plaintiff has begun a course of litigation against various companies and individuals in an effort to shore up his financial condition. A lawsuit has been filed against New York City, Westchester County Department of Public Works, Urban Construction Group Ltd and now me. Upon information and belief, plaintiff has personally guaranteed approximately $650,000.00 in debts which are currently owed by May Construction. These funds were used for personal reasons. The plaintiff is being actively pursued by Chase Bank for an outstanding loan of $400,000.00, by Bank of America and Wells Fargo Bank for $100,000.00 respectively and by various credit companies including but not limited to American Express.

27.    Plaintiff has engaged in several transactions and business activities which bear directly on his credibility to make a truthful affidavit.

28.    Upon information and belief, plaintiff created an Irrevocable Trust for the benefit of his wife, Irina Arons. He transferred assets into the trust to shelter them from creditors. Upon information and belief, he transferred his personal residence located at 78 Easton Road, Westport, CT into the irrevocable trust, transferred it back into his name in order to get a mortgage on it, and then transferred it back into the trust and put the proceeds of the mortgage into the irrevocable trust.

8

29.     Upon information and belief, plaintiff also committed bank fraud when he discovered that a first mortgage with Citimortgage had not been recorded on his residence. He then applied for and obtained another first mortgage on the house with American Home Mortgage. In fact, this property had a market value of $1,540,000.00 but was being encumbered by over $2.1 million of debt as a result of the two first mortgages. Moreover, the debt was in the name of the plaintiff, but the assets, cash and the house were sheltered in the trust. After being advised by me that his actions constituted fraud, he undertook to quickly pay the unrecorded mortgage with various lines of credit. Attached hereto as Exhibit F are copies of checks from various accounts that plaintiff used to pay off the Citimortgage loan.

30.     Plaintiff has characterized himself as an unwitting and innocent individual who has been taken advantage of. The opposite is true. He is an astute and knowledgeable man who was fully aware of each and every action which took place down to the minute detail with respect to May Construction, Windward Holdings, Bearhill Associates, and Landmark Construction. I was never paid a dollar, by myself or otherwise, without the full and complete knowledge and consent of the plaintiff.

31.     I am the current sole owner of Windward Holdings. Windward Holdings is an active corporation that is engaged in ongoing real estate activity, rental and development. The plaintiff only has a financial interest in the Middle Patent Road property. I, and Windward Holdings, will be irreparably harmed if I am enjoined from selling or transferring assets in which plaintiff has no interest. I will be further harmed if I am enjoined from completing the development of the Middle Patent Road property. Likewise, the other properties of Windward in which plaintiff has no financial interest

9

need to be managed. I, and Windward Holdings, will be irreparably harmed if I am enjoined from engaging in the day to day management of Windward's properties.

32.     I am also a member of Bearhill Associates. Bearhill Associates is an active limited liability company that is engaged in ongoing real estate development. Its property in Putnam County is currently being subdivided and is listed for sale. I, and Bearhill Associates, will be irreparably harmed if I am enjoined from selling or transferring the Bearhill property, or enjoined from engaging in the development of the property.

33.     The plaintiff has had no involvement in either the Middle Patent Road or Bear Hill development process over the years, except for paying his share of the costs. The plaintiff is now over 6 month behind in paying his portion of the bills and owes an excess of $56,000.00. We request that the court order that he pay what is due or forfeit a respective portion of his interest in these projects.

34.     All of the acts alleged in plaintiff's affidavit in support of his request for injunctive relief are false and unsubstantiated. Based on the foregoing, I respectfully request that the court deny plaintiff's request for injunctive relief in its entirety.

_____
ANTHONY BRANCA


Sworn to before me this 6th
        day of December, 2007

_____
    Notary Public

VICTORIA LASCALA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01LA6130695
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES: 07/18/20___

10

December 3, 2007

Re: May Construction Co., Inc.

To Whom It May Concern:

I, Lorraine Pellegrino being sworn, state the following.

1. I was the bookkeeper for May Construction Co., Inc.

2. On a monthly basis I would present Mr. Yuly Aronson the unopened bank statement for his accounting.

3. He would open, review and return same to me for reconciliation.

4. I performed this service until March 2007.

Sworn to me this
3rd day of December 2007

_Lorraine Pellegrino_
Lorraine Pellegrino

_Joan Thurse_
Notary Public

JOANN F. MIRONE
NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 31, 2009

EXHIBIT A

(A)

**COMMERCIAL** — USE THIS SIDE FOR ADDITIONAL SIGNATURES

Opened By: _Howell_

**AUTHORIZED SIGNATURE(S)**

**PRINT(ED) NAME(S) AND TITLE(S)**

Principal: _YULY ERUSO_
Position: _Pres_
Home Address _____ City, State, Zip Code _____ Years at Company
Home Phone No. _____
Business Phone No. _____

Principal: _ANTHONY BRAZA_
Position: _____
Address _____ City, State, Zip Code _____ Years at Company
Home Phone No. _____
Business Phone No. _____

Printed names: _Yuly Eruso_   _Anthony Braza_

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

I hereby certify to The Bank of New York that the person(s) and the card is/are authorized and such persons are duly authorized to sign.
_3/22/99_

I certify under penalties of perjury that:
1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me); and
2) I am not subject to backup withholding because: (a) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (b) the IRS has notified me that I am no longer subject to backup withholding.

Cross out item 2 if you are subject to backup withholding.

☐ I am an exempt payee (please see the instructions on Form W-9 which you have been provided).
☐ I am not a U.S. citizen or resident (or I am filing for a foreign corporation, partnership, estate or trust). If you check this box, your permanent address must appear in the Additional Account Information section of this card.

I acknowledge receiving a copy of Important Tax Information covering certification requirements and back-up withholding.

Depositor's Signature _____    Date _____

**ACCOUNT NAME/TITLE/ADDRESS**

MANN CONSTRUCTION CO INC.
PB-# 624
OLD CROSSWICK CT 06873

Nature of Business _____
Referred By: _____

ChexSystems Verification
of Tax Identification Number _____    Date Issued _____    State _____

Other BNY Accounts _____

Additional Information _____

**ACCOUNT NUMBER** _6202306362_
**ACCOUNT TYPE** _Check Org_
**DATE OPENED** _3/22/99_    DIVISION _33_    **BRANCH/GROUP N** _25_    OPENED BY _JW_

Depositor's Signature _____

The undersigned hereby agree(s) that this account shall be governed by the Rules and Regulations of The Bank of New York applicable to this account, a copy of which has been received.

**AUTHORIZED SIGNATURE(S)**    **PRINT(ED) NAME(S) AND TITLE(S)**

_Yuly Eruso_    Pres Sec
_Anthony Braza_    CM

☐ Corporation    ☐ Partnership
☐ Unincorporated Association    ☐ Other
☐ New Account    ☐ Supersedes All Prior Cards
Special Instructions:

☐ THE BANK OF NEW YORK

**TAX ID/SSN** _13-4003970_    Effective Date _____

COMMERCIAL ACCOUNT SIGNATURE CARD

SOURCE OF FUNDS

P 1/1    <<

2007-11-28 14:18

EXHIBIT B

# MAY CONSTRUCTION CO., INC
## VENDOR CARD REPORT

⑥

**VENDOR ID: TONY**

**CATEGORY:**

**ADDRESS:**
A. A. BRANCA & CO., CPA

**PURCHASES:**
Expense Account: 6270-00
Legal & Accounting
Vendor Account #:
Payment Terms: 0.00/0 NET 30

Phone:
Contact:

Fax:

**OPTIONS:**
Always Take Discount: No
Hold Transactions: No
Inactive: No

1099 Vendor: Yes
Occasional: No
Taxpayer EIN:

**VENDOR BALANCE: 0.00**

**COMMENTS:**

## VENDOR HISTORY

| DATE | TT | REF NO | DUE DATE | H | AMOUNT | OPEN BALANCE | DISC | DISC AVAIL |
|------|----|--------|----------|---|--------|--------------|------|------------|
| 03/04/99 | VC | | | | 405.00 | 0.00 | | 0.00 |
| 04/11/02 | VC | 00005070 | | | 2,000.00 | 0.00 | | 0.00 |
| 09/25/02 | VC | 00005508 | | | 18,000.00 | 0.00 | | 0.00 |
| 01/10/03 | VC | 00005854 | | | 2,000.00 | 0.00 | | 0.00 |
| 10/10/03 | VC | 00006499 | | | 10,000.00 | 0.00 | | 0.00 |
| 01/10/05 | VC | 00007657 | | | 4,000.00 | 0.00 | | 0.00 |
| 03/18/05 | VC | 00008075 | | | 20,000.00 | 0.00 | | 0.00 |
| 04/01/05 | VC | 00008147 | | | 5,000.00 | 0.00 | | 0.00 |
| 04/15/05 | VC | 00008268 | | | 15,000.00 | 0.00 | | 0.00 |
| 05/02/05 | VC | 00008283 | | | 5,000.00 | 0.00 | | 0.00 |
| 06/02/05 | VC | 00008426 | | | 5,000.00 | 0.00 | | 0.00 |
| 06/30/05 | VC | 00008559 | | | 5,000.00 | 0.00 | | 0.00 |
| 08/01/05 | VC | 00008656 | | | 5,000.00 | 0.00 | | 0.00 |
| 09/01/05 | VC | 00008777 | | | 5,000.00 | 0.00 | | 0.00 |
| 10/08/05 | VC | 00008955 | | | 5,000.00 | 0.00 | | 0.00 |
| 11/01/05 | VC | 00009026 | | | 5,000.00 | 0.00 | | 0.00 |
| 12/01/05 | VC | 00009187 | | | 5,000.00 | 0.00 | | 0.00 |
| 01/03/06 | VC | 00009364 | | | 5,000.00 | 0.00 | | 0.00 |
| 02/01/06 | VC | 00009519 | | | 5,000.00 | 0.00 | | 0.00 |
| 03/01/06 | VC | 00009677 | | | 5,000.00 | 0.00 | | 0.00 |

1

**MAY CONSTRUCTION CO., INC**
**VENDOR CARD REPORT**

| DATE | TT | REF NO | DUE DATE | H | AMOUNT | OPEN BALANCE | DISC | DISC AVAIL |
|------|-----|--------|----------|---|--------|--------------|------|-----------|
| 04/01/06 | VC | 00009864 | | | 5,000.00 | 0.00 | | 0.00 |
| 05/02/06 | VC | 00010073 | | | 5,000.00 | 0.00 | | 0.00 |
| 06/01/06 | VC | 00010272 | | | 5,000.00 | 0.00 | | 0.00 |
| 07/01/06 | VC | 00010495 | | | 5,000.00 | 0.00 | | 0.00 |
| 08/01/06 | VC | 00010745 | | | 5,000.00 | 0.00 | | 0.00 |
| 09/01/06 | VC | 00010854 | | | 10,000.00 | 0.00 | | 0.00 |
| 10/01/06 | VC | 00011135 | | | 10,000.00 | 0.00 | | 0.00 |
| 11/08/06 | VC | 00011353 | | | 15,000.00 | 0.00 | | 0.00 |
| 12/01/06 | VC | 00011446 | | | 10,000.00 | 0.00 | | 0.00 |

2

EXHIBIT C

# OPERATING AGREEMENT
## OF
## BEAR HILL ASSOCIATES, LLC

The undersigned, being the members of Bear Hill Associates, LLC (the "Company"), do hereby enter into this Operating Agreement (this Agreement), as members (the "Members").

The Members hereby form a limited liability company pursuant to and in accordance with the Limited Liability Company Law of the **State of New York** as amended from time to time (the "LLCL"), and hereby agree as follows:

### 1. Name.

The name of the limited liability company formed hereby is **"BEAR HILL ASSOCIATES, LLC"**

### 2. Term

The term of the Company shall continue until **January 1, 2022** unless dissolved before such date in accordance with the LLCL.

### 3. Purpose

The Company is formed for the purpose of engaging in the acquisition, subdivision and development of certain lands located on Bear Road in the Town of Patterson, New York and engaging in any and all activities necessary or incidental to the foregoing.

### 4. Members

The name and the business, residence, or mailing address of the Members are listed on Schedule A attached and made part of this agreement.

### 5. Managing Member

The Managing Member shall be Tony Branca and Yuly Aronson, jointly

### 6. Powers

The business and affairs of the Company shall be managed jointly by the Managing Member. The Managing Member shall have the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members under the LLCL.

-1-

*7. Capital Contributions*

The Members have contributed to the Company amounts, in the form of cash, property or services rendered, or a promissory note or other obligation to contribute cash or property or to render services. These contributions are listed on Schedule A attached and made part of this agreement. All such property shall be deemed to be owned by the Company and is subject to the other terms and provisions of this Agreement unless specifically stated otherwise in Exhibit "A".

*8. Additional Contribution*

No Member is required to make any additions capital contribution to the Company. If additional capital contributions are required, they will be made in accordance with the ownership percentages as listed on Schedule A.

    *8.01. Delinquent Capital Contributions.*
    All Members hereby agree and acknowledge that time is of the essence with respect to making any additional capital contributions requested. In the event a Member ("Delinquent Member") fails to make additional capital contributions within fifteen (15) days of the date requested, the Non-Delinquent Members may voluntarily make up the delinquent capital contributions for him.

    *8.02. Loans to the Company*
    If there are insufficient voluntary contributions to satisfy the total capital call by the Company, any Member who has made his required additional capital contribution may loan money to the Company. If the loan is outstanding for thirty (30) days or less, interest shall be paid at a rate equal to the Prime Rate as published by the "Wall Street Journal" (WSJ) plus two (2) points. If the loan is outstanding for more than thirty (30) days, interest shall be paid at a rate equal to the WSJ prime rate plus five (5) points. Interest shall be paid monthly.

*9. Allocation of Profits and Losses*

The Company's profits and loses shall be allocate among the Members as indicated in Schedule "A" attached and made part of this agreement.

*10. Distributions*

Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Managing Member. Such distributions shall be allocate among the Members as indicated in Schedule "A" attached and made part of this agreement.

*11. Purchase and Sale of Members Interest*

    *11.01 Purchase/Sale of the Members Interest Other than by Death.*
    **A.** *No Hypothecation.* No Member shall sell, assign or otherwise hypothecate all or any

-2-

part of his interest in the Company unless he shall first make an offer of his Members Interest pursuant to this paragraph.

**B.** *Offer.* If a Member desires to voluntarily or involuntarily withdraw from the Company or to sell any portion of his Members Interest, said Member (the "Offeror") shall notify the other Members of his offer to sell on the terms hereinafter provided and at a price determined pursuant to Article 13 and which shall be paid in accordance with the provisions of Article 14.  The non-offering Members shall have the right of first refusal which shall run for thirty (30) days after receiving notice.

### 11.02  Purchase/Sale of the Members Interest by Death.

In the event a Member shall die, the legal representative of said deceased Member shall offer to sell all his Members Interests to the other Members on the terms and conditions described in Section 13.02

## 12.  Disability

If a Member should become disabled in any way and to any extent, and is unable to fulfill his or her obligations as stated in section 5.01, said disability shall have no effect on said Member's ownership of his Members Interest.  Any compensation currently being received will continue, in full, for a period not to exceed three (3) months or until such time as Long Term Disability coverage begins payments.

## 13.  Purchase Price of Members Interest

### 13.01  Sale within Five Years Other than Due to Death.

In the event that a Member shall offer all or any part of his Members Interest for sale at any time within five (5) years of the date of this Agreement for any reason other than death, it is agreed that the purchase price for said Members Interest purchased pursuant to this Agreement shall be the lessor of -
> A.  The Members capital account balance as of the date of the sale, or
> B.  One thousand dollars ($1,000).

In addition, the disposing Member shall remain liable for all guarantees executed by him unless agreed to by the remaining Members.

### 13.02  Sale after Five Years or Due to Death.

In the event that a Member shall offer all or any part of his Members Interest for sale at any time after five (5) years of the date of this Agreement for any reason other than death, it is agreed that the purchase price for said Members Interest shall be the Members portion of the Fair Market Value of the business as determined the higher of the book value of the stock or the market value set by using the average of three (3) independent business appraiser's.

### 13.03  Accountants.

If the Company employs a Certified Public Accountant, such accountant may prepare the required financial information and determine the purchase price and book value in accordance with the provisions of this article.  Any party may request the services of an

independent certified public accountant and such party will be liable for the cost associated the same.

### 14. Payment of Purchase Price

#### 14.01 Payment on Sales within Five Years Other than Due to Death.
The purchaser shall pay the purchase price established in Section 13.01 in full at the time of closing.

#### 14.02 Payment on Sales after Five Years or Due to Death
The purchaser shall pay the purchase price established in Section 13.02 as follows:

- 20% of the purchase price shall be payable in cash at the closing
- The balance shall be payable in cash or by promissory note, at the option of the purchaser.

If by promissory note, the note shall bear interest at the WSJ prime rate in effect on the date of closing. Principle and interest shall be paid in equal monthly installments over a sixty (60) month period. In no case shall the interest be greater than ten (10%) percent. Such note may be prepaid without penalty.

### 15. Dissolution and Liquidation

During the term of this agreement, upon the unanimous vote of the Members, the Company shall immediately commence to close its affairs. The Members shall continue to share profits and loses during the liquidation in the same proportions as before the dissolution.

### 16. Liquidation

The proceeds from the liquidation shall be applied as follows:
   A. To pay or provide the payment of debts incurred by the Company other than to the Members.
   B. To repay loans from Members.
   C. To Members for their capital accounts.
   D. To Members in accordance with their respective interests in the profits of the Company.

### 17. Assignments

A Member may not assign in whole or in part his interest in the Company.

### 18. Withdrawal of a Member

A Member may withdraw from the Company in accordance with the LLCL.

### 19. Admission of Additional Members

-4-

One or more additions members of the Company may be admitted with the consent of a majority of the Members.

### 20. Liability of Members

The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the LLCL.

### 21. Exculpation of Managers

The Managing Member shall not be liable for any breach of duty in such capacity except that if a judgment or other final adjudication adverse to him or her establishes that his or her acts or omissions were In bad faith or invoked intentional misconduct or a knowing violation of law or that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled or that with respect to a distribution to Members his or her acts were not performed in accordance with the LLCL.

### 22. Governing Law

This Agreement shall be governed by, and construed under. the laws of the **State of New York**, all rights and remedies being governed by said laws.

### 23. Notices

All notices and demands under this Agreement shall be in writing, mailed certified mail, return receipt requested directed to the Members at the addresses listed in Exhibit A, and to the Company at its principal office.

### 24. Validity

In the event that any portion of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this agreement.

### 25. Waiver

The waiver by any Member of a breach of any term, covenant, agreement or condition herein shall not be deemed a waiver of any subsequent breach of the same.

### 26. Assignment

Each Member shall be prohibited from selling, assigning, transferring, or hypothecating his interest in the Company other than by the means set forth herein.

### 27. Amendments and Alterations

This Agreement may be amended at any time by mutual written consent of all of the Members.

- 5 -

**28. *Agreement***

This Agreement contains the entire agreement and understanding of the Members with respect to the subject matter hereof. All prior discussions, negotiations, commitments and understandings related thereto are merged herein.

In witness whereof, the undersigned, intend to be legally bound hereby, have duly executed this Operating Agreement as of the 25th day of February, 2002

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

## SCHEDULE A
### 2002

| NAME & ADDRESS | CAPITAL CONTRIBUTIONS | ALLOCATION % PROFITS | LOSES | OWNERSHIP |
|---|---|---|---|---|
| Tony Branca | $ 200,000 | 50.0% | 50.0% | 50.0% |
| Yuly Aronson | $ 200,000 | 50.0% | 50.0% | 50.0% |

- 7 -

FILING RECEIPT
================================================================================
ENTITY NAME: BEAR HILL ASSOCIATES, LLC


DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM LLC)          COUNTY: PUTN

SERVICE COMPANY: CSC NETWORKS/PRENTICE HALL          SERVICE CODE: 45 *

================================================================================
FILED:01/07/2002 DURATION:01/01/2020 CASH#:020107000347 FILM #:020107000337

ADDRESS FOR PROCESS                                    EXIST DATE
-------------------                                    ----------
THE LLC                                                01/07/2002
700 SUMMER ST. STE 1K
STAMFORD, CT 06901


REGISTERED AGENT
----------------

================================================================================
FILER                    FEES      235.00   PAYMENTS    235.00
-----                    ----                           --------
                         FILING    200.00   CASH          0.00
MR. BEAR HILL ASSOCIATES TAX         0.00   CHECK         0.00
C/O A.A. BRANCA & COMPANY CERT       0.00   CHARGE        0.00
700 SUMMER ST.           COPIES     10.00 DRAWDOWN      235.00
STAMFORD, CT 06901       HANDLING   25.00   BILLED        0.00
                                            REFUND        0.00
                                            ------
================================================================================
607386DAV                                       DOS-1025 (11/89)

*State of New York    }*  *ss.:*
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

   *Witness my hand and seal of the Department of State on*   **JAN 1 0 2002**



*Special Deputy Secretary of State*

DOS-1266 (7/00)

F-0201070003337

## ARTICLES OF ORGANIZATION

OF

## BEAR HILL ASSOCIATES, LLC

### Under Section 203 of the Limited Liability Company Law

FIRST:  The name of the limited liability company is

BEAR HILL ASSOCIATES, LLC

SECOND:  The county within this state in which the office of the limited liability company is to be located is Putnam.

THIRD:  The latest date on which the limited liability company is to dissolve is:  1/1/2020.

FOURTH:  The secretary of state is designated as agent of the limited liability company upon whom process against it may be served.  The post office address within or without this state to which the secretary of state shall mail a copy of any process against the limited liability company served upon him or her is 700 Summer St. Suite 1k Stamford, CT 06901.

FIFTH:  The limited liability company is to be managed by (check appropriate box):

[X]  1 or more members

[ ]  A class or classes of members

[ ]  1 or more managers

[ ]  A class or classes of managers

_David Bass_ (signature)

David Bass, Organizer
(name and capacity of signer)

/

F 0 2 0 1 0 7 0 0 0 3 3 7

ARTICLES OF ORGANIZATION

OF

BEAR HILL ASSOCIATES, LLC

Under Section 203 of the Limited Liability Company Law

Filer:   Mr. Bear Hill Associates
         C/o A.a. Branca & Company
         700 Summer St.,   Stamford CT 06901

Cust Ref# 607386 DAV

DRAWDOWN

ICC

STATE OF NEW YORK
DEPARTMENT OF STATE

JAN 0 7 2002

FILED
TAX $ _____ _____
BY: _____ _____

2

0 2 0 1 0 7 0 0 0 3 4 7

# NYS Department of State

## Division of Corporations

**Entity Information**

---

Selected Entity Name: BEAR HILL ASSOCIATES, LLC

Selected Entity Status Information

**Current Entity Name:** BEAR HILL ASSOCIATES, LLC
**Initial DOS Filing Date:** JANUARY 07, 2002
**County:** PUTNAM
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC LIMITED LIABILITY COMPANY
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
BEAR HILL ASSOCIATES, LLC
700 SUMMER ST. STE 1K
STAMFORD, CONNECTICUT, 06901
**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results                    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

EXHIBIT D

# Windward Holdings Corp
## Amendment to Shareholders Agreement

For $10 and other valuable consideration, Yuly Aronson sells his shares in Windward Holdings to Tony Branca. He forever relinquises any claims he may have to the assets held in the name of the corporation except for the following.

Mtg note to Jacek Swinderski in the amount of $150,000 maturing 9/1/06 and a Mtg note to Grzegorz Watroba in the amount of $90,000 maturing 2/1/07.

These assets and the related interest generated therefrom will be split on a 50/50 basis between the 2 parties.

The breakdown labeled "700 Summer St Sale", attached,  is incorporated to and becomes part of this amendment

Agreed to this 1st day of June 2005

_____
Yuly Aronson

_____
Tony Branca



700 Summit St Sale

(1)

| | | |
|---|---|---|
| PRICE | $405000 | |
| COMMISSIONS | <20250> | 5% |
| RB3772L | +2531 | 1/2 DAYS PRORAW |
| TAXES .7 | <3038> | .75% |
| SECURITY DEPOSIT | <2000> | |
| CASH SECURES | +8237 | 5/1/05 |
| CAP GAINS TAX | <14125> 15% | NET $381712 |
| | | BASIS 187548 |
| | | Y.U.Y 100000 |
| | $376355 | PROFIT $94164 |
| | $188177 ⟹ | $8177 STOCK |
| | | $180,000 CASH |

(2) MAY CONSTRUCTION Co, INC  WILL PAY
RENT AT THE RATE OF  $250 /MO
EFFECTIVE JUNE 1 2005

ANTHONY BRANCA

100

1-8/210

Date 5/25/05

Pay to the order of _YULY ARONSON_ | $ _180000—_

One Hundred EIGHTY Thousand 00/100 _____ Dollars

**citibank**

CITIBANK, N.A.
399 PARK AVENUE
NEW YORK, NY 10043

Wyndward Stock

Memo 700 Sumner St

⑆021000089⑆   0008584629⑈0100



**OFFER TO PURCHASE**

AGREEMENT between _Winward Holding Corp._ _5/3_ 20_05_
residing at _____ who hereby agrees to SELL
and _Patrick Dlois_
residing at _111 Jordan Lane, Stamford, Ct_ who hereby agrees to BUY
the property known and described as: _700 Summer St. 12_

including the following extra items: _As per listing # 98234677_

excluding the following items: _____

• Terms and conditions of the sale are as follows:
Price $ _401,000_
Payable $ _4050_ Cash as a binder herewith, receipt of which is hereby acknowledged.
Payable $ _36950_ Cash on signing superseding contract on or before _3wk_ (date).
Payable $ _____ Cash on taking title to the premises on _time of cert of title_ (date).
_60 days_

• Contingent on satisfactory reports of the following inspections of the premises:
Building: ____✓____ Date: _____
Septic: _____ Date: _____
Radon: ____✓____ Date: _____
Wood Eating Insects: _____ Date: _____
Pool: _____ Date: _____
Other (specify): _____ Date: _____
_____ Date: _____

• Contingent on obtaining a mortgage loan of $ _364500_ at ____% for ____ years by _3wk from_ (date).
BUYER _Contingent on review of condo docs + need for residential cert of title_
_Confirmation that units can be rented + separated into 3 units 1L, 1R, 1A_
_both units to be vacant or 1 yr lease in place_
Home Phone: _____ Home Phone: _____

Work Phone: _____ Work Phone: _____

BUYER Attorney : _____ SELLER Attorney: _____

Address: _____ Address: _____

Phone: _____ Phone: _____

The SELLER and the BUYER agree that _Jon Werub_ of _ERA Sharp RE_
located at _____ (Telephone # _359-4425_ ) is the LISTING broker
and _Cruzi Flynn_ of _C+B_
located at _125 Kings Ridge Rd_ (Telephone # _322-2300_ ) is the SELLING
broker in this transaction, and the SELLER agrees to pay the agent who effects a sale the commission as stated on the effective listing.
This agreement to remain in full force and effect and constitutes a valid contract between the parties hereto unless, or until superseded
by further contract between parties, incorporating detailed description of the property and providing for adjustment of taxes, rent,
interest, insurance premiums, etc.

The SELLER and the BUYER further agree that the above stipulations are to apply to and bind the heirs, executors, administrators and
assigns of the respective parties.

ACCEPTED:    SELLER                                   ACCEPTED:    BUYER

_____              _____
(Signed)                                              (Signed)

_____              _____
Name                                                  Name

_____              _____
Witness                                               Witness

```
1-MAY-2005 08:32:26 ===================================        #4

CN/CO  Ln: 98234677      ER        NEW      Mt:   4   List: $  425,000
Off Mkt:         Closed :         So:        Sa:        Sale: $
+----------------------------------------------------------------------+
| Adr:700 SUMMER ST          Unit:1L    Twn:470-STAMFORD      HO Assc:YES|
| Mkt Area:MID CITY          Cplx: 700 SUMMER      Sub Type: CO         |
| Dir: 700 SUMMER BETWEEN NORTH AND BROAD                               |
+----------------------------------------------------------------------+
| Sty:HI-RISE    Clr:           Blt:1980 Wtrfrnt:NO                     |
| Rooms:12  Br: 3  Bth:2/1 Sqft: 2710+/- Gar:0 UND,RSVD   #Units        |
| Bsmt:STORAGE           Heat:ELEC               Ac:WIND UNT            |
| Pet:YES Swr/Wtr:SEWER,CITY WATER                                      |
+----------------------------------------------------------------------+
| Amenities:SHOPPING/MALL,LIBRARY,MEDICAL FACILITY,PUBLIC TRANSPORTATION |
+--------------------+------------------+----------------------------------+
|Unit Lvl: 1         |Common Charges:    780  Tax District Amount:     . |
|                    +--------------+ Asmt:  107100 Mil: 29.16 Tax:  3123 |
|  Room Dimen. Lvl Desc          +------------------------------------------+
| Lr  :                              Br1:                                 |
| Dr  :                              Br2:                                 |
| Fr  :                              Br3:                                 |
| Den:                               Br4:                                 |
| Kit:                                   :                                |
| Mbr:                                   :                                |
| Apl:RNG,MICRO,REF                      :                                |
| Int:SEC/SYS                                                            |
+----------------------------------------------------------------------+
|Desc:RANCH                                                             |
+----------------------------------------------------------------------+
|  Gs: ROXBURY         Ms: CLOONAN        Hs: WESTHILL                  |
+----------------------------------------------------------------------+
|  Remarks:    TWO SEPARATE APARTMENTS (2 BR & 1 BR) WITH FOUR ROOM OFFICE|
|              LIVE AND RUN YOUR OFFICE OR CONVERT INTO 3BR APARTMENT    |
|              ENDLESS POSSIBILITIES.                                    |
|              EKB  TO BE INSTALLED ON 05/01.                            |
|                                                                       |
+----------------------------------------------------------------------+
|Sho:CALL (203) 223-0683 AND GO AFTER 04/30.                  Sign:NO   |
|Own:WINWARD HOLDINGS CORP      Ph:         Lbx:EKB                     |
|Ten:                    Ph:                 Ocp:NEG      Discl:YES     |
+----------------------------------------------------------------------+
|Offc:NEA SHAYS REAL ESTATE          Ph:203-359-4425 Bac: 2.5          |
|Agnt:JEAN WAWAK                     Ph:203-846-6859 Sac:              |
+----------------------------------------------------------------------+
LISTING INFORMATION COMES FROM VARIOUS SOURCES AND MAY NOT ALWAYS BE ACCURATE.
NO REPRESENTATION OR WARRANTY IS MADE AS TO THE ACCURACY OF THIS INFORMATION.
 YOU SHOULD VERIFY ANY INFORMATION THAT IS IMPORTANT TO YOUR BUYING DECISION.
```

WINDWARD HOLDINGS CORP
**BALANCE SHEET**
**May 31, 2005**

ASSETS

CURRENT ASSETS



| | | |
|---|---|---|
| DELETE1 | $ | -0.00 |
| BONY - Windward Holdings | | 8,236.96 |
| | | |
| TOTAL CURRENT ASSETS | $ | 8,236.96 |

PROPERTY AND EQUIPMENT

| | | |
|---|---|---|
| Land-Hutchinson Island | $ | 466,235.00 |
| Land-Bedford | | 227,500.00 |
| Land-Tesoro | | 187,517.00 |
| Buildings | | 299,548.00 |
| A/D - Buildings | | (32,225.00) |
| Building Improvements | | 88,000.00 |
| A/D - Building Improvements | | (34,122.00) |
| A/D - Leasehold Improvements | | (15,394.00) |
| | | |
| TOTAL PROPERTY AND EQUIPMENT | $ | 1,187,059.00 |

OTHER ASSETS

| | | |
|---|---|---|
| Mtg Loans-Isidori | $ | 60,000.00 |
| Mtg Loans-Swiderski | | 150,000.00 |
| Mtg Loans-Watroba | | 90,000.00 |
| | | |
| TOTAL OTHER ASSETS | $ | 300,000.00 |
| | | |
| TOTAL ASSETS | $ | 1,495,295.96 |

1

Federal 1120S Depreciation Report
**Regular Tax**

Activity ............ Form 1120S  All Activities - 2005
Total cost of goods sold ..........

| Description | In Service | Cost | Land | Bus % | Type | Class | Conv | **Depr** |
|---|---|---|---|---|---|---|---|---|
| Cost of Goods Sold | Disposed | Basis | Sec. 179 | Listed | Mthd | Life | Year | Prior |
| MIXED USE, 700 SUMMER S | | | | | | | | |
| 700 SUMMER ST | 01/01/02 | 99,548. | 0. | 100.00 | MACRS | R | MM | 3,620. |
| | | 99,548. | | | SL | 27.50 | 4 | 10,709. |
| LEASEHOLD IMPROVEMENTS | 01/01/02 | 88,000. | | 100.00 | MACRS | 7 | HY | 10,995. |
| | | 88,000. | | | 200DB | 7.00 | 4 | 49,516. |
| SINGLE FAMILY, 38 SENEC | | _187548_ | | | | | | |
| 38 SENECA WALK | 01/01/02 | 200,000. | 0. | 100.00 | MACRS | R | MM | 7,273. |
| | | 200,000. | | | SL | 27.50 | 4 | 21,516. |

Total                                387,548.        0.                                          21,888.
                                     387,548.                                                    81,741.

---

Federal 1120S Depreciation Report
**Alternative Minimum Tax**

Activity ............ Form 1120S  All Activities - 2005

| Description | Real | Leased | AMT Cost | AMT Life | AMT Depr | **AMT Adj** |
|---|---|---|---|---|---|---|
| | | | AMT Basis | AMT Mthd | AMT Prior | **AMT Pref** |
| MIXED USE, 700 SUMMER ST, | ☐ | ☐ | | | | |
| 700 SUMMER ST | ☐ | ☐ | 99,548. | 27.50 | 3,620. | 0. |
| | | | 99,548. | SL | 10,709. | |
| LEASEHOLD IMPROVEMENTS 700 | ☐ | ☐ | 88,000. | 7.00 | 10,779. | 216. |
| | | | 88,000. | 150DB | 39,495. | |
| SINGLE FAMILY, 38 SENECA W | ☐ | ☐ | | | | |
| 38 SENECA WALK | ☐ | ☐ | 200,000. | 27.50 | 7,273. | 0. |
| | | | 200,000. | SL | 21,516. | |

Total                                387,548.                    21,672.            216.
                                     387,548.                    71,720.



EXHIBIT E



Account No.: 670-3165433

1/2

SWINDORSKI,
MTG

Period:
Page:

Banking
Ba



## Check Images

| WINDWARD HOLDINGS CORP. | THE BANK OF NEW YORK | 1320 |
|---|---|---|
| 100 SUMMER STREET, SUITE 1R STAMFORD, CT 06901 | 50 226/219 | 00001320 |

PAY    THIRTY-ONE AND 75 / 100 Dollars

DATE    09/01/06    AMOUNT    *******$31.75

TO THE ORDER OF
VERIZON
PO BOX 1100
ALBANY, NY 12250-0001

631-583-6616-672-27-9

⑆001320⑆ ⑈021902352⑈ ⑉703165433⑉ ⑆00000003175⑊

**Ck. No.1320          09/07          $31.75**

| WINDWARD HOLDINGS CORP. | THE BANK OF NEW YORK | 1321 |
|---|---|---|
| 100 SUMMER STREET, SUITE 1R STAMFORD, CT 06901 | 50 226/219 | 00001321 |

PAY    SEVENTY-FIVE THOUSAND AND XX / 100 Dollars

DATE    09/01/06    AMOUNT    ****$75,000.00

TO THE ORDER OF    YULY ARONSON

⑆001321⑆ ⑈021902352⑈ ⑉703165433⑉ ⑆0007500000⑊

**Ck. No.1321          09/13          $75,000.00**

| WINDWARD HOLDINGS CORP. | THE BANK OF NEW YORK | 1322 |
|---|---|---|
| 100 SUMMER STREET, SUITE 1R | | |



*nking*

### Account No.   670-3165433



| Ck. No.1320 | 09/07 | $31.75 |

| Ck. No.1321 | 09/13 | $75,000.00 |



EXHIBIT F



